Cardozo, J.
If the original action in the superior court had "been tried before me, it is not certain, especially in view of the fact that the burden of proof rested upon the plaintiffs therein, that, even expunging the evidence of Britton and Carroll as wholly unworthy of credence, I should have reached the same conclusion as the referee did. It is quite certain that had the motion for reference been addressed to me it would not have been granted, and also that if I were now sitting merely to review the referee’s report I should not permit it to stand. I do not mean to say that the court has not jurisdiction to grant a reference in the action, but I do mean that within all the authorities the power ought not to have been exercised, because even if an account had to be taken, the trial involved “ difficult questions of fact,’.’ and in such cases a reference should always, according to the practice as it has existed ever since the statute authorizing references was passed, be refused. Indeed, if ever there were a case which, because of the nicety of the only question really involved, or seriously litigated, the trial of the issue, should have been in open court, before a jury, the one out of which this action has arisen is that case. The question really turns upon so nice and difficult a point as this, substantially, but briefly stated ; whether Bee, in giving an order for the purchase of stocks in Moser’s presence, spoke in the singular or plural number. A question so nice and difficult should have been left to a jury, and if, which the evidence on the trial disclosed is not the fact, the taking of an account became necessary, after the verdict was rendered, to enable the court to determine the amount of the judgment, that matter could have been referred, after the real issue had been tried in the only fitting tribunal., Such would have been the proper practice.
With these views of the impropriety of trying the cause out of court, it will easily be understood that were I re-} viewing the judgment of the referee, I should scrutinize very carefully the case disclosed before him, and, unless the evidence were overwhelming in favor of the report, I should set it aside, and afford Mr. Moser an opportunity *444 of trying the merits before an appropriate tribunal. Without discussing the evidence in the superior court, or giving the views that occurred to my mind upon it, the following prominent facts may be stated: That the report was very large, being for $125,652.57 ; that although the time when the cause was submitted does not distinctly appear, yet from the fact that Mr. Sandford’s printed argument bears date November 19, 1867, it must have been about that time; that the referee reported on the 4th day of December, without giving any opinion showing how or why he reached his conclusions ; that thus it appears that this important case, comprising more than fourteen hundred folios of evidence, was under consideration not more than fifteen days. Included in the report was a sum of $7,000, as to "which it is not denied there was no evidence whatever to support it. This great oversight, in a case of such importance, involving so large an amount, occasions in my mind so much distrust of the accuracy of the report, so great fear that the case was too hastily considered, when a report which was to take $125,00.0 from a man was made within so brief a period, without any explanation of the reasons which led the referee to take the view he did of the testimony, that I should have felt called upon, instead of reducing the judgment, to set it aside, and submit the very delicate inquiry presented, to a jury-—the tribunal which is the best, as w'ell as the most popular, for the determination of questions of fact. I should have been too apprehensive that the referee had, unintentionally, of course, failed to comprehend the case, to permit any part of his judgment to stand, when it was so clearly erroneous to such a large extent, and I should have felt the less hesitancy about taking that course, because the only harm, in view' of the undisputed pecuniary responsibility of Mr. Moser, that Messrs. Jackson and Polhamus could possibly suffer, if they were entitled to recover, would be a little delay, which would be of trivial consequence, in comparison with the careful administration of justice.
But however forcibly these considerations may impress me, upon the present application, they do not furnish any *445 ground for relief. The only ground upon which relief can "be claimed here is, that the judgment was obtained by fraud. There can be no doubt of the jurisdiction of this court to entertain an action like the present. That such a bill might have been filed in the late court of chancery was not disputed on the argument, and is undeniable, and all the powers which that court could exercise are now vested in this court, which has “ general jurisdiction at law and in equity. ” The case of Grant v. Quick (5 Sandf., 612), cited by the learned counsel for the defendants, does not conflict with these views, and has no application here. That case only holds that while a suit is pending and undetermined in one court, competent to give full relief, no other court should interfere. But in this case the suit in the superior court was ended before this action was brought.
But there is an insuperable difficulty to the granting of this motion, resting upon the failure of the plaintiff to support by credible evidence the allegations of fraud which he makes. A judgment—in a court having jurisdiction of the persons of the parties and of the subject-matter—after a regular trial, sustained upon appeal to the general term, has been obtained in the superior court against Mr. Moser by the present defendants, Messrs. Jackson & Polhamus. To justify the court of chancery, or this court, as its successors, in preventing the enforcement of that judgment on the ground of fraud in obtaining it, the fraud charged must not only be plain and palpable, but the evidence by which it is to be proven must be clear, positive, and entirely credible. Presumptively that judgment is valid, and the burden of impeaching it rests upon present plaintiff. He can overthrow it only by the clearest, most positive and perfectly credible testimony, and it I am convinced that, however free from fault I may believe him to be, he has the misfortune not to have credible witnesses to establish his allegations, then the judgment, which imports verity, must stand against him, and if I can see that such should be the result, if the case was now *446 being tried, then I ought not to continue the temporary injunction. „
When a motion is made either to continue or to dissolve an injunction the question is, would the court, having before it all the evidence disclosed in the hearing of the motion, have granted the injunction in the first instance? If it .would not, then the injunction should be dissolved.
Now, the fraud charged by Mr. Moser is attempted to be proven by the evidence of Ree, Britton, Carrol, Potter, and Mallison. It is unnecessary to repeat here why Ree’s evidence could not be regarded. The learned counsel for the plaintiff,'with characteristic frankness,.very early in the motion, admitted that it should have no weight with me. As to the four other persons, probably never before was such an exhibition made in a court of justice, and I trust there never will be again. Rot only did these men make several contradictory affidavits, but they appeared, in court, before me, and. on oath confessed that they had willfully and deliberately sworn in some of the affidavits to things they knew to be untrue. I can not, as the learned "counsel for the plaintiff eloquently urged me to do, take into consideration what, he argued, were the means resorted to to get these men to contradict their first set of affidavits. I do not stop to inquire whether the counsel’s deductions from the evidence in that respect be sound or not. Here they can be of no importance, because if threats or any other means would induce those people to perjure themselves, I can not believe them at all. That is the difficulty with the plaintiff’s case. ,His witnesses are wholly unworthy of belief, and being so, must be discredited ; and being discredited, the judgment of the superior court stands unimpeached, and, standing unimpeached, its enforcement should not be further prevented.
For these reasons, the motion to continue the injunction must be denied and the preliminary injunction vacated ; but from what I have said, it is plain that in my opinion it should be done without costs, and with leave to the plaintiff to discontinue this action without costs, and *447 the defendants must stipulate not to move for leave to sue the undertaking given upon the granting of the temporary injunction, and not to bring any action for damages on account of it.
Respecting the course to be pursued as to the persons who made the affidavits referred to, and any further investigation which I may think proper to be made in regard thereto, I have concluded to hand all the original papers to the district-attorney for his action, making to him such suggestions as I deem the circumstances demand.
Ordered accordingly.