DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1924.

---

Orlando Noble, Charles M. Thumm and William F. Thumm, trading as Noble & Thumm, Appellants, v. Arthur S. Carruthers, trading as Arthur S. Carruthers & Company, and Robert L. Leffingwell, Appellees.

## Gen. No. 28,745.

INTERPLEADER—*sufficiency of bill to show jurisdiction to interplead conflicting claimants for broker's commission.* Where a bill of complaint alleges that complainants are the owners of certain real estate and gave authority to both of defendants to procure a tenant therefor, neither being given exclusive authority; that a tenant was procured by one of them for which service complainants owe a commission; but that each defendant claims to be entitled to such commission and has sued for it and that complainants do not know to which it should be paid, and prays that defendants be required to interplead between themselves, the complainants being willing to pay the amount due to the one determined by the court to be entitled thereto, a court of equity has jurisdiction to determine the matter.

Appeal by plaintiffs from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1923. Reversed and remanded with directions. Opinion filed November 26, 1924.

DELBERT A. CLITHERO, for appellants.

McGOORTY, SILVER, ISAACS & WOLEY, for appellees.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is a bill of interpleader, to which one of the defendants filed an answer, and the other a demurrer. The demurrer was sustained and the suit dismissed. This is an appeal from that decree.

The bill of complaint alleges that the complainants, owners of a certain valuable piece of real estate in Evanston, and being desirous of renting it, gave authority to the defendant, Arthur S. Carruthers & Co., a real estate firm, and, also, authority to the defendant Robert L. Leffingwell, a real estate dealer, to procure a tenant therefor.

It is further alleged that a tenant was obtained by one of the two defendants, and that the complainants owe for those services a commission of $2,409.51, which is the customary commission for such services, and that they are willing to pay that amount to the one entitled thereto.

It further alleges that each of the defendants claims the commission; that each claims to have been the procuring cause; that each has sued it, the complainant, at law, for the full amount of the commission. It further alleges that the complainants never entered into any express contract to pay either of the defendants any stipulated sum as commission for procuring a tenant; that neither of the defendants had any exclusive right to obtain a tenant; that the complainants are liable to pay a commission, but only on an implied contract, to one of the defendants, that is, to the one who was the efficient and procuring cause of the lease being made, and he does not know to whom it should be paid.

The prayer asks that the defendants be required to

interplead between themselves, the complainants being willing to pay the said amount to the one to whom the court may determine it is due. The prayer also asks that further proceedings in both suits at law, meanwhile, be restrained.

The order of the chancellor sustaining the demurrer to the bill of complaint raises the question whether, assuming the allegations of the bill to be true, a court of equity had jurisdiction.

In our judgment, the case of *Newhall v. Kastens,* 70 Ill. 156, is decisive, and answers that question in the affirmative. The facts in that case are as follows: One Newhall, the complainant, made an agreement with Woolacott, one of the defendants, by which the latter was to erect for the former a brick building and receive therefor a stipulated sum. Woolacott sublet the brick work to one Reinhardt. The latter never completed his contract, and Woolacott was compelled to finish it at his own expense. After deducting from the amount Reinhardt would have been entitled to receive, had he fulfilled his agreement, the cash payments made to him, and what it cost to finish the work, there remained the sum of $399.52. That sum was still in the possession of Newhall and was claimed by both Woolacott and Reinhardt. A number of other persons, claiming to have performed labor or furnished materials to Reinhardt under his contract with Woolacott, and having served notices on Newhall, claimed liens under the provisions of the Mechanics' Lien Law [Cahill's Ill. St. ch. 82]. The bill was to enjoin the prosecution of certain suits by some of those claimants, and to compel Woolacott, Reinhardt and the others to interplead and settle their respective rights to the funds in the hands of the complainant. In that case Mr. Justice Scott said:

"It will be observed, it is alleged that Woolacott and Reinhardt both claimed the same fund in the hands of appellant, and the other defendants insist on having their respective claims satisfied out of his

property. If no one other than Woolacott and Reinhardt were interested in the subject matter of this litigation, it is apparent it would be strictly a case where a bill of interpleader would lie. So far as they are concerned, there is but one fund in controversy, and in that appellant has no interest, and is anxious to pay it to whom it is in law due, and seeks the aid of the court to determine that question.

"The case would come exactly within the definition given in the books, of an interpleader. Where two or more persons claimed the same fund or property, by different or separate interests, and another person does not know to whom it of right belongs, and as to which he is wholly indifferent as between them, he may exhibit a bill of interpleader as against them. The ground of jurisdiction is the apprehension of danger to himself from the doubtful and conflicting claims of the several parties, as between themselves; and the only decree he is entitled to, is, that his bill is properly filed, that he have liberty to pay the money or deliver the property to the party entitled thereto, and be thereafter protected from the several claimants. 3 Dan. Chan. Prac. 1754; *Mitchell v. Hayne,* 2 Sim. & Stu. 63; *Bedell v. Hoffman,* 2 Paige, 199.

"Such a bill may be filed, though the party has not been sued at law, or has been sued by one, only, of the conflicting claimants, or though the claim of one is actionable at law and the other in equity; and it is apprehended the principle would be the same, whether the actions would be pending in the same court or distinct courts having concurrent jurisdiction. *Richards v. Salter,* 6 Johns. Ch. 445.

"Mr. Story, in his work on Equity Jurisprudence, says: 'Although a bill of interpleader, strictly so called, lies only where the party applying claims no interest in the subject matter, yet there are many cases where a bill in the nature of a bill of interpleader will lie by a party in interest to ascertain and establish his own rights, where there are other conflicting rights between third persons;' and the author cites a number of cases where relief has been administered on this principle. 2 Story Eq. Jur. sec. 824."

And in holding that the court had the right to take jurisdiction, even of the claims of those who worked or furnished materials for Reinhardt, a subcontractor, the court said:

"It is difficult to conceive a case where a bill, in the nature of an interpleader, would more appropriately perform its office, than in the case at bar.   *  *  *   In any view that can be taken, Newhall would be equitably entitled to have the funds in his hands applied in reduction of the claims of the mechanics and materialmen, and it is not perceived how it can be so appropriately done as by a bill in equity, of the character of the one filed.   Chancery would be wanting in its power to do justice where the law, by reason of its universality, fails, if it could afford no relief under the facts presented by this record."

In the briefs of counsel the cases of *Sachsel v. Farrar,* 35 Ill. App. 277; *Snow v. Ulrich,* 126 Ill. App. 493, and *Platte Valley State Bank v. National Live Stock Bank,* 155 Ill. 250, have been cited.   In the *Sachsel* case, a bill of interpleader was filed by one Bridge asking that the two defendants interplead so as to determine which one of them was entitled to commissions on the sale of certain real estate, which sale each of them claimed had been effected through his exertions.

The court there said:

"If either of them is entitled to commissions it is because of some contract he had with Bridge, and not because of anything that has happened between themselves.   Neither of them claims by a title derived from the other.   If Bridge has incautiously committed himself with both of them, he must make, at law, the best defense he can to the double claim.   It is no case for an interpleader."   Citing, 3 Pom. Eq. secs. 1319 to 1329.

In the *Snow* case, Mr. Justice Smith amplifies and analyzes the *Sachsel* case as follows:

"In that case the owner had employed two independent brokers to assist him in making a sale of the

same property, and both of them had at different times produced to him the same prospective purchaser, but no sale was concluded at that time. Subsequently one of the brokers brought in the same person and a sale was made, and thereupon the owner entered into a written agreement with the broker to pay him the commission on the sale. The owner thus incurred an independent liability to one of the claimants, and having done so, he could not compel him to litigate with the other complainant. 11 Ency. of Pl. & Pr. 459, and authorities there cited. The opinion in the Sachsel case proceeds upon the theory that if by independent contracts with each broker the owner had become liable to pay each a commission, they were not claiming the same fund and the owner was not entitled to maintain a bill of interpleader.''

In the *Snow* case itself, all three of the parties, complainant and the two defendants, were real estate agents. The complainant had represented the vendor in a sale, and received therefor a commission, and was to pay one-half of it to the broker who produced the purchaser. Each of the defendants claimed to have produced the purchaser and to be entitled to one-half of the commissions. One of the claimants had sued the complainant at law, and the other threatened suit. The complainant alleged he had been paid $1,125 as commissions, and that one-half of it, $562.50, he held as the *res* or stake subject to the interpleader. The court there cited *Newhall v. Kastens*, 70 Ill. 156; *Shipman v. Scott*, 14 Daly (N. Y.) 233, and the *Sachsel* case, *supra*, and held that the bill would lie.

The only difference between the *Snow* case and the instant case lies in the fact that in the former the *res* or stake, a sum which he had received from the vendor, was actually held as a defined sum of money by the stakeholder, the complainant, for one of the defendants, whereas, here the *res* or stake is made up of an admission by the complainant that he owes for services a certain sum to one of the defendants, —but does not know to which one—and the offer to

bring that amount into court. That difference, however, is insubstantial.

According to *Platte Valley State Bank v. National Live Stock Bank,* 155 Ill. 250, quoting Pomeroy's Eq. Jurisprudence, sec. 1322, the equitable remedy of interpleader involves four necessities: First, all the parties defendant must claim the same thing; second, all their claims must spring from the same source; third, the moving party must not have nor claim any interest in the subject matter; and, fourth, he must have incurred no independent liability to either of the claimants, must be disinterested, and merely a stakeholder. The bill of complaint in this case contains, sufficiently, all those requisites. There are cases to the contrary, such as *Maxwell v. Frazier,* 52 Ore. 183, and, in part, *Morgan v. Kraft,* 285 Fed. 906, both of which, however, are based on a misconception of the actual facts in the *Sachsel* case, *supra.* And it is true that in the early history of the law as it pertains strictly to bills of interpleader, such a situation as exists here would not give a court of equity jurisdiction. See Langdell, Equity Pleading, 162.

But the tendency of the law seems to be more and more towards allowing bills in the nature of bills of interpleader wherever there are conflicting claims, made by several against one, which grow out of a single transaction and which may be determined with better justice in one suit in equity than in several suits at law.

The judgment will be reversed and the cause remanded with directions to overrule the demurrer.

*Reversed and remanded with directions.*

O'CONNOR, P. J., concurs.

MR. JUSTICE THOMSON, specially concurring: In my opinion the case at bar differs from those relied upon by appellees, involving contests over brokerage fees, in that the complainants merely listed their property with each of the two defendant brokers, thus giving rise

to similar implied promises to each of them, that if a lease were negotiated in which either was the sole and efficient procuring cause, the usual commission would be paid, while in the cases relied upon by appellees, the complainants entered into an independent express agreement with one of the brokers, as a result of which they might be liable to both of them. In those cases payment of the claim of one of the brokers might not preclude a recovery by the other. In the case at bar, under the allegations of the bill, the complainants have entered into no independent express agreement with either broker and they cannot be liable to both. If it should be determined that they are liable to one, their liability to the other would necessarily be precluded. Obviously, there cannot be two sole and procuring causes of the successful negotiations of the same lease. But if complainants are put to their defense of two separate suits at law, each with its own separate record and evidence, it is not difficult to conceive a situation in which the complainants might have to answer to two judgments. That is a situation which equity should and will prevent under such facts as are alleged in the bill of complaint involved here.

Defendants argue in their brief that "there is no privity of contract existing between the two brokers." There need not be in order to make out a proper case for interpleader. That contention is probably founded on an expression to be found in *Sachsel v. Farrar*, 35 Ill. App. 277, where it was said that neither of the brokers there involved "claims by title derived from the other." No such requirement is contemplated by either of the four essential elements to a bill for interpleader as relied upon by defendants and laid down by the authorities and referred to in the foregoing opinion.